UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Kiesha L. Holmes,                                            Case No.  3:24-cv-2212

           Plaintiff,

    v.                                                   MEMORANDUM OPINION
                                        AND ORDER

Officer Moss, et al.,

           Defendants.

## I.      INTRODUCTION

*Pro se* Plaintiff Kiesha Holmes brings this civil rights action against the Toledo Police Department, Toledo Police Officers Moss, Sluterbeck, and Mielcarek, Toledo Municipal Court Judge Jim Anderson, 13 Action News, and 13 Action News Reporter Shaun Hegarty.  (Doc. No. 3). Holmes also filed an Application to Proceed *In Forma Pauperis*.  (Doc. No. 2).   I grant her Application to Proceed *In Forma Pauperis*, (*id.*), and dismiss this case pursuant to 28 U.S.C. § 1915(e).

## II.      BACKGROUND

In her Amended Complaint, Holmes alleges that on April 2, 2024, she was awakened at 12:30 a.m. by her twelve-year-old granddaughter knocking at her door.  (Doc. No. 3 at 2).  Holmes asserts she had told her granddaughter four days earlier that she could not visit anymore after she had started fires in Holmes's attic and on her stove.  (*Id.*).  Therefore, when her granddaughter knocked on her door that night, Holmes turned her away.  Her granddaughter then went to a neighbor's house, and the neighbor called the police.  (*Id.*).

When the police arrived, they knocked on Holmes's door and told her that her granddaughter needed a place to stay until her mother could be contacted to come and pick her up. (*Id.*).  Holmes declined to take her in, explaining to the officers that her granddaughter was a safety threat and was not welcome at the home.  (*Id.* at 2-3).  Specifically, she told them of the fires four days prior and revealed that, when her granddaughter did stay with Holmes, she regularly snuck out after Holmes was asleep, leaving windows and doors unlocked or open and the home generally vulnerable to theft and other crimes.  (*Id.*).

With this, the officers returned to the neighbors and asked if the child could stay with them, but they refused.  (*Id.* at 3).  The officers then returned to Holmes and told her it was against the law for her to refuse to allow her granddaughter to stay with her.  (*Id.*).  They discussed other options such as Safety Net and Children Services, but the officers determined neither of these options would effectively resolve the immediate situation.  (*Id.*).

At this point, Holmes's daughter, the child's mother, was contacted and spoke with the officers.  (*Id.*).  She reported that the child had run away the day before and does this often.  (*Id.*).  She also mentioned several delinquency cases the child had pending against her in juvenile court and suggested that Children Services be contacted, and that the child remain in their care until she got back into town.  (*Id.* at 3-4).

Holmes claims that despite knowing her granddaughter's history, that she did not live with Holmes, and that Holmes did not have legal custody of her, the officers arrested Holmes and charged her with child endangerment.  (*Id.* at 4).  Holmes was booked for this offense and claims she spent several hours in a jail cell before she was rushed to a hospital with high blood pressure.  (*Id.*). After her release from the hospital, she was able to meet with a public defender before appearing before Toledo Municipal Court Judge Jim Anderson.

While Holmes now asserts she was never provided a copy of the police report, she also suggests that she learned of its contents at some point during or prior to her appearance before Judge Anderson.  Specifically, she alleges the officers falsely stated in the police report that Holmes had custody of her granddaughter and suggests she raised the "false report" issue to Judge Anderson, claiming he said he did not care about this or whether she had custody.  (*Id.*).  Holmes also alleges Judge Anderson was rude and disrespectful to her and faults Judge Anderson's Order barring her from returning to her home and requiring her to have no contact with her granddaughter.  (*Id.*).

At some point after this incident occurred, Holmes alleges "13 Action News was called to do a story" about this incident and events that allegedly followed.  (*Id.* at 5).  Holmes asserts 13 Action News Reporter Shaun Hegarty reporter came to her home to interview her.  (*Id.*).  She claims that after the interview, Hegarty and news crew changed the narrative to fit the police reports and aired a story that was false and embarrassing.  (*Id.*).

Based on these events, Holmes seeks to bring claims of denial property without due process, false arrest, conspiracy to violate constitutional rights, cruel and unusual punishment, false imprisonment, abuse of process and defamation.  (*Id.* at 6-7).  She lists as Defendants an Officer Moss, an Officer Sluterbeck, a Sargeant Mielcarek, the Toledo Police Department, Judge Jim Anderson, 13 Action News, and Reporter Shaun Hegarty.  (*Id.* at 1).  But when articulating her claims, she does not explain any of those claims and does not connect them to any particular Defendant.  But from her narrative, it appears that her due process claim and Eighth Amendments claim are asserted against Judge Anderson, her false arrest and false imprisonment claims are asserted against the police officers, and her conspiracy claims are asserted against 13 Action News and its reporter.  It is not clear against whom her abuse of process claim is asserted.  She seeks monetary damages.

### III. STANDARD

Although *pro se* pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), I am required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

A pleading must contain a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Twombly*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.*

### III. ANALYSIS

Plaintiff asserts claims for false arrest and false imprisonment against the Toledo Police Department and Officers Moss, Sluterbeck, and Mielcarek. As an initial matter, the Toledo Police Department is not *sui juris*, meaning it is not a legal entity under Ohio law that can sue or be sued. *See, e.g., Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) (upholding the dismissal of the Cuyahoga County Sheriff's Department because it "is not a legal entity that is capable of being sued") (citing cases); *Gibson v. Mechanicsburg Police Dep't*, Case No. 3:16-cv-48, 2017 WL

4

2418317, at *5 (S.D. Ohio June 2, 2017) (dismissing claims against the Mechanicsburg Police Department because it is not sui juris).  Because the Toledo Police Department is merely a subunit of the City of Toledo, Plaintiff's claims against it fail as a matter of law.

While claims of false arrest and false imprisonment generally arise under state tort law, they may also be construed under the Fourth Amendment.  *Weser v. Goodson*, 965 F.3d 507, 513-14 (6th Cir. 2020).  When a false-imprisonment claim arises out of an alleged false arrest, as it does in this case, the claims are identical for Fourth Amendment purposes.  Both require Plaintiff to plead sufficient facts to reasonably suggest that the arresting officer lacked probable cause to arrest the Plaintiff.  *Id.* (citing *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)).  For probable cause to exist for an arrest, the "facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense."  *Weser*, 965 F.3d at 514 (quoting *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003)).

In this case, the offense for which Holmes was arrested was child endangerment.  In defining the crime of child endangering, the Ohio Revised Code § 2919.22(A) states:

> No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age … shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.

Ohio Rev. Code Ann. § 2919.22 (West).

It is unclear from the complaint whether Holmes was the legal guardian for her granddaughter.  Nevertheless, even if Plaintiff was not the legal guardian of her granddaughter at the time of her arrest, her granddaughter had been routinely staying with her in her house prior to Plaintiff's arrest.  Plaintiff acknowledges having physical custody and control of her granddaughter just four days earlier.  (Doc. No. 3 at 2).  Further, even if Plaintiff was not in loco parentis of her

5

granddaughter, Plaintiff may still have owed her a duty of care. *See, e.g., State v. Caton*, 739 N.E.2d 1176, 1181 (Ohio Ct. App. 2000) ("[G]randparents not in loco parentis to the child may, nevertheless, still owe a legal duty of care and protection to the child if the child is in their custody or control.").

Based on those facts, a prudent officer could reasonably believe that a crime was being committed or about to be committed when Plaintiff refused, at 12:30 a.m., to allow her 12-year-old granddaughter back into her house for the night. Plaintiff has not alleged sufficient facts to suggest that the officers violated her Fourth Amendment rights.

Next, Holmes claims Judge Anderson denied her due process and subjected her to cruel and unusual punishment when he ordered her to stay away from her house and to have no contact with her granddaughter. But Judge Anderson holds absolute immunity from suits for damages based on actions he took while presiding over her case. *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Judges are accorded this broad immunity to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages by dissatisfied litigants. *Barnes*, 105 F.3d at 1115.

For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is performed at a time when the Defendant is not acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides. *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116. *See also Stump*, 435 U.S. at 356-57.

Neither of these exceptions to immunity apply in this case. The only allegations in the Complaint that pertain to Judge Anderson concern decisions he made in the criminal case against Holmes. Moreover, Judge Anderson is a municipal court judge, and municipal courts have

jurisdiction to hear misdemeanor cases. Ohio Rev. Code § 1901.20(A)(1). Judge Anderson is immune from suit in this case and therefore, Holmes's claims against him are dismissed.

Holmes next claims 13 Action News and reporter Shaun Hegarty conspired "to block [her] from gaining justice." (Doc. No. 3 at 5). She does not allege facts to describe the conspiracy or even with whom these Defendants allegedly conspired. She simply states that she called 13 Action News to do a story on the behavior of the Toledo Police Department. She states that Hegarty took two months to decide to interview her and then took another four months to come to her house.

When the report aired, it conformed to the information in the police report. She alleges that "corruption runs deep in Toledo" and asserts "[a]ll stated above participating in a conspiracy to break the law and violated the civil rights of a protected class." (Doc. No. 3 at 6). She indicates at the beginning of her Complaint that she is an African American. (*Id.* at 1). Based on her statement, it appears that Plaintiff may be attempting to assert a claim under 42 U.S.C. § 1985.

To establish a violation of § 1985, Plaintiff must allege that the Defendants conspired together for the purpose of depriving her of the equal protection of the laws and committed an act in furtherance of the conspiracy which was motivated by racial or other class-based invidiously discriminatory animus. *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). She must allege facts demonstrating: (1) a conspiracy of two or more persons existed; (2) with the purpose to deprive, directly or indirectly, her or a class of persons of equal protection of the laws; (3) committed an act in furtherance of the conspiracy; and (4) which caused injury to her. *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (citing *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828-29 (1983)). The acts that allegedly "deprived the Plaintiff of equal protection must be the result of class-based discrimination." *Id.* (citing *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992)).

It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a

claim under § 1985.  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  Plaintiff must include sufficient factual allegations to link two or more alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy.  *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (holding that plaintiff failed to state a claim for conspiracy pursuant to § 1985 for failure to allege a meeting of the minds).

Plaintiff fails to state a claim under § 1985.  First, she fails to allege facts to suggest that any of the Defendants engaged in a conspiracy.  She alleges only that the news agency aired a report that supported the facts contained in the police report.  There is no indication of any collaboration or a meeting of the minds between the new agency, the police, or the judge.  Second, there is no suggestion that any of the Defendants acted to discriminate against Plaintiff based on her race.  It is not sufficient for Plaintiff to simply state that she is a member of a protected class.  She must also allege facts to suggest that her race was a motivating factor in the conspiracy.  There are no allegations in the Complaint that suggest this was the case.

Finally, Plaintiff asserts a claim for abuse of process.  She does not direct this claim against any Defendant in particular.  To the extent that it is different from her due process claims against Judge Anderson and her Fourth Amendment claims against the police officers, it would arise under state tort law.  Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966).  The Court, however, may exercise discretion in hearing state law matters.  *Id.* at 726.  In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed.  *Id.*  Having dismissed Plaintiff's federal law claims, I decline to exercise supplemental jurisdiction to hear Plaintiff's state law claims.

## IV.   CONCLUSION

Having considered and examined the *pro se* Plaintiff's pleadings to determine their legal viability, I conclude she fails to state a claim upon which relief may be granted.  Therefore, this action is dismissed pursuant to 28 U.S.C. § 1915(e).  Plaintiff's motion to proceed *in forma pauperis*, (Doc. No. 2), is granted.

I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.  This case is closed.


So Ordered.


s/ Jeffrey J. Helmick
United States District Judge

9